# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOB CHAVOYA, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MERRILL GARDENS L.L.C. DBA TRUEWOOD BY MERRILL, a Washington limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendants. | No. 1:24-cv-00268-KES-BAM<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND**<br><br>(Doc. 15) |

Before the court is a motion to remand filed by plaintiff Jacob Chavoya ("plaintiff" or "Chavoya"), Doc. 15 ("Mot. to Remand"), following removal to this court by defendant Merrill Gardens L.L.C. dba Truewood by Merrill ("defendant" or "Merrill Gardens"). Doc. 1 ("Notice of Removal"). For the reasons set forth below, the court DENIES plaintiff's motion to remand.

**I.    Background**

On January 30, 2024, Chavoya, individually and on behalf of similarly situated individuals, filed a putative class action complaint against Merrill Gardens in the Superior Court of the State of California for the County of Fresno. The complaint alleges nine causes of action: (1) Failure to Pay Minimum and Straight Time Wages (Cal. Lab. Code §§ 204, 1994, 1194.2, and

1

1197); (2) Failure to Pay Overtime Wages (Cal. Lab. Code §§ 1194 and 1198); (3) Failure to Provide Meal Periods (Cal. Lab. Code §§ 226.7, 512); (4) Failure to Authorize and Permit Rest Periods (Cal. Lab. Code § 226.7); (5) Failure to Timely Pay Final Wages at Termination (Cal. Lab. Code §§ 201-203); (6) Failure to Provide Accurate Itemized Wage Statements (Cal. Lab. Code § 226); (7) Failure to Indemnify Employees for Expenditures (Cal. Lab. Code § 2802); (8) Failure to Produce Requested Employment Records (Cal. Lab. Code §§ 226 and 1198.5); and (9) Unfair Business Practices (Cal. Bus. & Prof. Code §§ 17200 *et seq.*). *See generally* Notice of Removal, Ex. A ("Compl.").

On March 4, 2024, Merrill Gardens filed a notice of removal alleging diversity jurisdiction under the Class Action Fairness Act of 2005. Notice of Removal 3-4. In support of its notice of removal, Merrill Gardens filed the declaration of Richard Boberg. Doc. 1-1 ("Boberg Decl."). On April 15, 2024, Chavoya moved to remand the action to state court, challenging Merrill Gardens' assertion that the amount in controversy has been met. Mot. to Remand. In its opposition, Merrill Gardens maintains that the amount in controversy is met and asserts that the motion to remand is untimely. Doc. 17 ("Def.'s Opp'n"). Chavoya filed its reply on May 9, 2024. Doc. 20 ("Pl.'s Reply"). The court held a hearing on the motion on May 28, 2024.[1]

**II.    Facts**

Chavoya was an hourly-paid, non-exempt employee of Merrill Gardens from approximately February 2022 until June 2023. Compl. ¶ 7. Chavoya brings this action individually and on behalf of all other current and former hourly-paid or non-exempt California employees employed by defendant during the relevant period. *See, e.g.*, Compl. ¶ 2. The proposed class is defined as "[a]ll persons who worked for any Defendant in California as an hourly-paid or non-exempt employee at any time during the period beginning four years and 178 days before the filing of the initial complaint in this action and ending when notice to the Class is

---

[1] Pursuant to Federal Rule of Evidence 201, the court takes judicial notice of the state and federal court filings attached to plaintiff's unopposed request for judicial notice (Doc. 16). The court also grants defendant's unopposed request for judicial notice of certain dictionary definitions and state and federal court filings (Doc. 18).

2

1  sent." Compl. ¶ 25.

2      The complaint alleges that defendant "at times, knowingly failed to pay to Plaintiff and the Class, or some of them, compensation for all hours they worked." Compl. ¶ 34. Plaintiff also alleges that "Plaintiff and the Class, or some of them, have at times worked more than eight hours in a workday and/or more than forty (40) hours in a workweek" and defendant "failed to pay Plaintiff and the Class, or some of them, overtime compensation." Compl. ¶¶ 45-46. Further, the complaint asserts that defendant "at times, failed to provide Plaintiff and the Class, or some of them" with the required number of meal periods and "at times failed to authorize Plaintiff and the Class, or some of them, to take rest breaks." Compl. ¶¶ 53, 57. Defendant also allegedly "at times failed, and continue[s] to fail, to pay terminated Class Members" all wages owed following termination. Compl. ¶ 61. Moreover, plaintiff claims that defendant "at times" failed to provide to plaintiff and the class complete and accurate wage statements, failed to pay and indemnify plaintiff and the class, or some of them, for expenditures they incurred because of their employment, and failed to provide plaintiff and the class, or some of them, with requested employment records. Compl. ¶¶ 68, 75-76, 83-85. Finally, plaintiff alleges defendant's actions constitute a violation of the California Business & Professions Code. Compl. ¶¶ 88-92.

### III.    Legal Standard

    The Class Action Fairness Act of 2005 ("CAFA") grants federal district courts original jurisdiction over class actions in which there are at least 100 class members, any plaintiff is diverse in citizenship from any defendant, and the amount in controversy exceeds $5 million, notwithstanding interest and costs. 28 U.S.C. § 1332(d); *see also Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015). Congress intended CAFA to be interpreted expansively, and "[n]o antiremoval presumption attends cases invoking CAFA." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922, 924 (quoting *Dart Basin Operating Co. v. Owens,* 541 U.S. 81, 135 (2014)).

    "The amount in controversy is not a prospective assessment of a defendant's liability," but rather "is the amount at stake in the underlying litigation." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018) (cleaned up). "In determining the amount in controversy,

courts first look to the complaint." *Ibarra*, 775 F.3d at 1197 (quotations omitted). When the complaint does not state the amount of damages, the defendant seeking removal bears the burden to show that the amount in controversy exceeds $5 million. *Id.*

In its notice of removal, a defendant need only include "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart*, 541 U.S. at 89. However, when "a defendant's assertion of the amount in controversy is challenged . . . both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 88. "The parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Ibarra*, 775 F.3d at 1197 (citation omitted).

A challenge to a defendant's assertion of the amount in controversy can be facial or factual. *See Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020). "A facial attack accepts the truth of the [defendant's] allegations but asserts that they are insufficient on their face to invoke federal jurisdiction," whereas a "factual attack contests the truth of the . . . allegations themselves." *Id.* (internal citations and quotation marks omitted). "When a plaintiff mounts a factual attack, the burden is on the defendant to show, by a preponderance of the evidence, that the amount in controversy exceeds the $5 million jurisdictional threshold." *Id.* (citations omitted).

"A defendant may rely on reasonable assumptions to prove that it has met the statutory threshold." *Id.* at 701; *see also Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022). "[A]t [this] stage of the litigation, the defendant is being asked to use the plaintiff's complaint—much of which it presumably disagrees with—to estimate the amount in controversy" so the defendant "must be able to rely 'on a chain of reasoning that includes assumptions to satisfy its burden to prove by a preponderance of the evidence that the amount in controversy exceeds $5 million,' as long as the reasoning and underlying assumptions are reasonable." *Jauregui*, 28 F.4th at 993 (quoting *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015)). The "burden of demonstrating the reasonableness of the assumptions on

4

which the calculation of the amount in controversy [is] based remain[s] at all times with [the defendant]." *Harris*, 980 F.3d at 701. "An assumption may be reasonable if it is founded on the allegations of the complaint." *Arias*, 936 F.3d at 927. A defendant does not need to "provide evidence proving the assumptions correct" as this would be akin to "impos[ing] a requirement that [the defendant] prove it actually violated the law." *Id*. Rather, such assumptions "must only have 'some reasonable ground underlying them'" and "cannot be pulled from thin air." *Id.* at 925 (quoting *Ibarra*, 775 F.3d at 1199).

"The district court should weigh the reasonableness of the removing party's assumptions, not supply further assumptions of its own." *Id.* Yet "there is an important distinction between a court offering entirely new or different assumptions itself versus modifying one or more assumptions in the removing party's analysis." *Jauregui*, 28 F.4th at 996. It remains true that "[w]here a defendant's assumption is unreasonable on its face without comparison to a better alternative, a district court may be justified in simply rejecting that assumption and concluding that the defendant failed to meet its burden." *Id.* at 996. However, where "the reason a defendant's assumption is rejected is because a different, better assumption is identified," the court "should consider the claim under the better assumption—not just zero-out the claim." *Id.* This is in part because "the amount in controversy is supposed to be an estimate of the entire potential amount at stake in the litigation," which "demonstrates the unrealistic nature of assigning $0" to a plaintiff's claims. *Id.* at 994.

Under certain circumstances, attorneys' fees may also be included in the amount in controversy. "[I]f the law entitles the plaintiff to future attorneys' fees if the action succeeds, then there is no question that future attorneys' fees are at stake in the litigation, and the defendant may attempt to prove that future attorneys' fees should be included in the amount in controversy." *Fritsch v. Swift Transp. Co. of Ariz.*, 899 F.3d 785, 794 (9th Cir. 2018) (internal quotations, brackets, and citation omitted). However, "a court's calculation of future attorneys' fees is limited by the applicable contractual or statutory requirements that allow fee-shifting in the first place." *Id.* at 796.

## IV. Discussion and Analysis

The parties do not dispute that the number of potential class members exceeds 100 or that the required minimal diversity between the parties exists. The issues before the court are whether the motion to remand was timely filed and whether the amount in controversy exceeds $5 million.

### A. Timeliness

Defendant argues that the motion to remand is untimely because it was filed more than 30 days after the notice of removal was filed. "A motion to remand the case *on the basis of any defect other than lack of subject matter jurisdiction* must be made within 30 days after the filing of the notice of removal." 28 U.S.C. § 1447(c) (emphasis added). Chavoya moves to remand on the basis that this court lacks subject matter jurisdiction. Specifically, he asserts that the amount in controversy does not meet the $5 million jurisdictional threshold required under CAFA. Therefore, under 28 U.S.C. § 1447(c), the motion to remand could have been brought at any time during this suit.

Merrill Gardens' assertion that the court should interpret Chavoya's challenge as a procedural one, rather than as one based on subject matter jurisdiction, and therefore that the court should find the motion untimely, falls short. Merrill Gardens cites *Behrazfar v. Unisys Corp.*, 687 F. Supp. 2d 999, 1002 (C.D. Cal. 2009), but that case does not support its argument that plaintiff's challenge to removal in this case is only procedural. While *Behrazfar* notes that "[t]here is no bright line rule for whether an argument for remand is based on subject matter jurisdiction or a mere procedural defect," it also emphasizes that the cases noting potential murkiness in this area of law "do not affect a plaintiff's right to argue that subject matter jurisdiction is, in fact, absent." *Id.* Here, Chavoya argues that subject matter jurisdiction is absent.

Chavoya does not allege that there is merely a procedural defect in the notice of removal. Rather, he contests the sufficiency of Merrill Gardens' proof as to the jurisdictional issue, asserting that Merrill Gardens fails to meet its burden of establishing the jurisdictional amount with sufficient evidence. That is a challenge to the court's subject matter jurisdiction, not simply a procedural challenge. *See id.* Under 28 U.S.C. § 1447(c), subject matter jurisdiction may be

6

1 challenged at any point before final judgment. Chavoya's motion to remand is therefore timely.

2      **B.**     **Amount in Controversy**

3 Chavoya moves to remand on the grounds that the amount in controversy does not exceed the $5 million CAFA jurisdictional minimum. Because the complaint does not state the amount of damages sought, and plaintiff mounts a factual challenge to defendant's asserted amount in controversy, the burden rests with Merrill Gardens to prove by a preponderance of the evidence that the amount in controversy exceeds $5 million.[2] *See Ibarra*, 775 F.3d at 1197; *Harris*, 980 F.3d at 699. Defendant has met this burden.

In its opposition to the motion to remand, Merrill Gardens estimates the amount in controversy at $16,192,973.00 including attorneys' fees. Def.'s Opp'n 19. In calculating this amount, Merrill Gardens relies on the language of the complaint, the dictionary definition of "at times" as meaning "sometimes," and the Boberg declaration. *See generally* Def.'s Opp'n. Based on Boberg's review of payroll records, during the relevant period Merrill Gardens employed approximately 3,850 potential class members, who, combined, worked approximately 203,836 work weeks.[3] Boberg Decl. ¶ 10. Additionally, approximately 2,217 potential class members separated from the company during this time. *Id.* ¶ 11. The declaration further provides that the potential class members earned an average wage of $18.42 per hour. *Id.* ¶ 15.

The complaint does not allege with specificity how frequently the alleged violations occurred. *See generally* Compl. For nearly all the alleged violations, it states that "the Class, or some of them," suffered the alleged violations "at times." *See, e.g.*, Compl. ¶¶ 34, 45, 53, 57, 61,

---

[2] Plaintiff's challenge is factual, rather than facial, because, as described below, plaintiff challenges the truth of defendant's allegations regarding the number of class members that suffered violations and the frequency of such alleged violations, not the "form" of defendant's showing. *See Harris*, 980 F.3d at 699-700.

[3] The Boberg declaration reflects data compiled in preparation for a similar pending class action litigation against Merrill Gardens and uses a date range approximately four months prior to the relevant dates in this action (September 1, 2019 through October 11, 2023, rather than January 30, 2020 through March 1, 2024). Boberg Decl. ¶ 8. The Boberg declaration states that the report nonetheless "provides an accurate estimate of the number of class members, workweeks and pay periods at issue in this case . . . because the hirings and terminations in the past 4 months have been at normal levels for the business." Boberg Decl. ¶ 8. Chavoya confirmed at the hearing that he does not challenge such employee "census data" set out in the Boberg Declaration.

68, 75, 85. Defendant asserts that, given the allegation that the violations occurred "at times," it is reasonable to assume one violation per quarter per potential class member for the purposes of calculating an amount in controversy, except for the claim for waiting time penalties.[4] *See* Def.'s Opp'n 11-12 (citing Doc. 18, Exs. A, B). The fifth cause of action, for waiting time penalties, asserts that Merrill Gardens "at times" failed to pay wages owed to potential class members who were terminated and therefore owes statutory waiting time penalties for such unpaid wages. Compl. ¶¶ 59-65. As to the claim for waiting time penalties, which apply if a terminated employee is owed unpaid wages upon the termination of his or her employment, defendant contends it is reasonable to assume that this claim applies to 100% of terminated potential class members. Def.'s Opp'n 17–18.

Using the information provided in the Boberg declaration, the assumed violation rates, and the relevant statute of limitations on each claim, defendant alleges the following amounts are in controversy for each claim, totaling $16,192,973.00:

- Failure to pay minimum wages: Defendant assumed ten minutes of unpaid wages per potential class member per quarter. Defendant multiplied 15,680 (the approximate number of quarters that potential class members worked during the relevant period) by the quotient of the average hourly wage of $18.42 and 6 (the average wages earned per 10 minutes of work) to equal $48,137.60. Because the complaint also seeks liquidated damages, Defendant doubled this amount to equal $96,275.20.[5] *Id.* at 14.

///

///

---

[4] Defendant also does not assert a once a quarter violation rate for the claim that defendant failed to produce requested employment records, but rather estimates only two dozen employees were affected. Def.'s Opp'n 18.

[5] In an action to recover unpaid wages under California Labor Code sections 98, 1193.6, 1194, or 1197.1, an employee is also entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid. Cal. Lab. Code § 1194.2(a).

8

- Minimum wage penalties[6]: Defendant multiplied 1,985 (the estimated number of employes during Labor Code § 1197.1's one year statute of limitations) by $100 (the initial violation fee) and added this total to the product of 4,893 (6,878 total quarterly violations minus the 1,985 initial quarterly violations) and $250 (the violation for subsequent penalties) to equal $1,421,750.00. *Id.* at 15.
- Failure to pay overtime wages[7]: Defendant assumed one hour of unpaid overtime wages per potential class member per quarter. Defendant multiplied the average overtime rate of $27.63 (the average hourly rate of $18.42 times 1.5) by 15,680 (the number of quarters worked by potential class members during the relevant period) to equal $433,238.40. *Id.*
- Failure to provide meal periods[8]: Defendant assumed a violation rate of one failure to provide a meal period per quarter per potential class member. Defendant multiplied 15,680 (the number of quarters worked by potential class members during the relevant period) by $18.42 (average hourly wage rate) to equal $288,825.60. *Id.* at 16.
- Failure to provide rest periods: Defendant assumed a violation rate of one failure to provide a rest period per quarter per potential class member. Defendant multiplied 15,680 (the number of quarters worked by potential class members

---

[6] Defendant argues that plaintiff's claim for failure to pay minimum wages under Labor Code § 1197 potentially entitles plaintiff to recover minimum wage penalties under Labor Code § 1197.1. The penalty under Labor Code § 1197.1 is $100 for an initial violation and $250 for subsequent violations. Plaintiff argues that the complaint does not assert a claim under § 1197.1. As the motion can be decided without considering minimum wage penalties, this decision does not further address them.

[7] Each non-exempt employee is entitled to be paid one and one-half times his or her regular rate of pay for time worked in excess of 8 hours per workday and/or more than 40 hours per workweek. Cal. Lab. Code § 510.

[8] An employee who does not receive a meal or rest period to which he or she is entitled shall be paid one hour of pay at her regular rate of compensation as premium pay. Cal. Lab. Code § 226.7(b).

9

during the relevant period) by $18.42 (average hourly wage rate) to equal $288,825.60. *Id.*

- Waiting time penalties[9]: Defendant assumed 100% of terminated class members were owed 30 days of wages for waiting time penalties. Defendant multiplied 2,217 (the number of potential class members who are former employees) by $18.42 (the average hourly rate) by 8 hours (daily shift length) by 30 days (the maximum days for continuation of wages) to equal $9,800,913.60. *Id.* at 18.

- Wage statement violations[10]: Defendant assumed one wage statement violation per quarter per potential class member. Defendant multiplied 1,985 (initial quarterly violations as determined by the estimated number of employees during the one-year statute of limitations period for this cause of action under Cal. Code Civ. Proc. § 340(a)) by $50 (the initial violation fee). Defendant then added this total to the product of 4,893 (6,878 total quarterly violations minus the 1,985 initial quarterly violations) and $100 (the violation fee for subsequent penalties) to equal $588,550.00. *Id.* at 17.

- Failure to provide payroll records and employment records: Defendant assumed two dozen employees suffered these alleged violations and multiplied 24 (two dozen employees) by $750 (the penalty under §§ 226(f) and 1198.5(k)) to equal

---

[9] An employer must pay a terminated employee all wages earned and unpaid at the time of the employee's discharge if the employer terminates the employee or within 72 hours of the employee quitting or stating an intention to quit. Cal. Labor Code §§ 201 and 202. An employer who fails to pay a terminated employee such unpaid wages within the required time owes the terminated employee a penalty wage equal to one day of the employee's wages until the owed unpaid wages are paid, up to a maximum of thirty days of penalty wages. *Id.* § 203.

[10] Based on plaintiff's underlying claims for failure to pay all wages due, defendant also failed to provide accurate wage statements. Under California Labor Code § 226, an employer owes a penalty of $50 "for the initial pay period in which a [wage statement] violation occurs and [$100] per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of [$4,000]".

|   |   |
|---|---|
| 1 | $18,000.  *Id.* at 18.  Because the penalty is the same under both statutes, defendant |
| 2 | doubled that product to equal $36,000.00.  *Id.* |
| 3 | • Attorneys' fees[11]:  Defendant calculated attorneys' fees at 25% of the damages |
| 4 | calculated above, which total $12,954,378.40, resulting in an estimation of |
| 5 | $3,238,594.60 in attorneys' fees.  *Id.* at 19. |

*See generally* Def.'s Opp'n.

Chavoya confirmed at the hearing that he does not dispute the employee "census data" in the Boberg declaration, or Merrill Gardens' use of this data in the calculation of the amount in controversy.  The issues in dispute between the parties on this motion are whether Merrill Gardens has applied an appropriate violation rate for the frequency of the claimed occurrences, and whether the allegations in the complaint support defendant's assumption that all class members were affected by the violations.

Plaintiff argues that defendant's assumed violation rate of one violation per quarter, which defendant uses to calculate the amount in controversy for most of the claims alleged to have occurred "at times," is impermissibly "pulled from thin air."  *See Ibarra*, 775 F.3d at 1199. Specifically, plaintiff asserts it would be "just as consistent with the complaint to assume" other violation frequencies.  Plaintiff argues that the complaint's assertion that a violation occurred "at times" would be just as consistent with the alleged violation happening once a day, once a week, once a pay period, once a quarter or perhaps even with less frequency, and thus, without more, defendant has not met its burden to show that its assumed violation rate of one violation per quarter is reasonable.  Pl.'s Reply 2, 6-7, 10 (citing *Duran v. Allegis Glob. Sols., Inc.*, Case No. 20-cv-09025, 2021 WL 3281073, at *3 (N.D. Cal. Aug. 2, 2021).  At the hearing, plaintiff agreed that the violation rate for all asserted claims is "north of zero," but he argues that defendant's estimated violation rates are without foundation because the complaint's language cannot support

---

[11] Plaintiff takes issue with defendant's calculation of attorneys' fees. Pl.'s Reply 9.  Because this motion can be resolved without considering attorney's fees, this decision does not further address them.  Additionally, plaintiff's claim that defendant failed to indemnify employees for expenditures is not addressed because defendant did not estimate an amount in controversy for that claim.

1  them and defendant has failed to supply extrinsic evidence to support them.  Pl.'s Reply 7-8.

2  While the burden of proving the amount in controversy lies with the defendant, it is improper to "characterize[] [a defendant's] assumed violation rates as being 'speculation and conjecture'" on the basis that a defendant did not "provide evidence proving the assumptions correct," as that would essentially "impose[] a requirement that [defendant] prove it actually violated the law at the assumed rate."  *Arias*, 936 F.3d at 927.  A defendant is not required to put forth evidence that it committed the alleged violations to meet its burden.  *Id.*  Defendant need not assert the validity of its assumed violation rates in a declaration; rather, defendant is permitted to make assumptions based on the language of the complaint and evidence like that which it submitted in the Boberg declaration, as defendant has done here.  *See id.* at 925 (grounds for assumptions may be "founded on the allegations of the complaint" itself and do not have to be based on extrinsic evidence by the defendant); *Ibarra*, 775 F.3d at 1199 (defendant is entitled to rely upon "a chain of reasoning that includes assumptions" about what the allegations of the complaint mean).

Defendant applies a violation rate of one violation per quarter per potential class member, which translates to a violation on 1 out of every 65 shifts (1.5% of shifts), to plaintiff's claims for failure to pay minimum wages, failure to pay overtime wages, meal period violations, rest period violations, and failure to provide accurate itemized wage statements.[12]  "At [this] stage of the litigation . . . [a defendant] must be able to rely on a chain of reasoning that includes assumptions to satisfy its burden to prove by a preponderance of the evidence that the amount in controversy exceeds $5 million, as long as the reasoning and underlying assumptions are reasonable."  *Jauregui*, 28 F.4th at 993 (citation omitted).  A 1.5% violation rate is a reasonable assumption for a violation alleged to have happened "at times."  *See Sanchez v. Abbott Labs.*, 2021 WL 2679057, at *4 (E.D. Cal. June 30, 2021) (collecting cases where courts in this circuit held assumed

---

[12] While plaintiff disputes defendant's assumed violation rate of once per quarter per employee for claims for failure to pay minimum wages, failure to pay overtime wages, meal period violations, rest period violations, and failure to provide accurate itemized wage statements, as noted above, plaintiff does not dispute the figures set out in the Boberg declaration to which defendant applies the violation rate.

1   violation rate between 20% and 60% reasonable when complaint alleges a "pattern and practice"
2   of violations). However, the court need not rely solely on that conclusion to find the amount in
3   controversy has been met, as defendant also establishes the required amount in controversy
4   through the claim for waiting time penalties alone, as addressed further below, and the calculation
5   for that claim does not rely on the assumed violation rate of 1.5% of shifts worked.

6   Plaintiff also argues that defendant's amount in controversy calculations as to alleged
7   minimum wage violations, overtime wage violations, meal period violations, rest period
8   violations, and wage statement violations fail because defendant assumes that all class members
9   suffered the alleged violations. Plaintiff asserts that such an assumption does not comport with
10  the complaint's language that the claims apply to "Plaintiff and the Class, or some of them." *See,*
11  *e.g.*, Compl. ¶¶ 34, 46, 53, 57, 68. Otherwise stated, plaintiff argues that defendant's assumption
12  in its calculations that all potential class members suffered the alleged violations at the 1.5%
13  violation rate (one shift per quarter) is unreasonable because it fails to recognize that the
14  complaint pleads that the violations may have occurred either to "Plaintiff and the Class" or to
15  "some of them." Plaintiff's argument is inconsistent with the plain language of the complaint.
16  The complaint does not allege that the violations occurred only to a subset of the class; rather, it
17  pleads that these violations happened to all potential class members, or, in the alternative, to some
18  of them.

19  Plaintiff chose to plead, in the alternative, that "Plaintiff and the Class" suffered the
20  alleged violations. The amount in controversy "reflects the *maximum* recovery the plaintiff could
21  reasonably recover," *Arias*, 936 F.3d at 927, given the "amount at stake in the underlying
22  litigation" based on what the plaintiff has alleged. *Chavez v. JPMorgan Chase & Co.*, 888 F.3d
23  413, 417 (9th Cir. 2018). Assuming to be true the allegation that plaintiff and the class suffered
24  the violations, the maximum amount in controversy includes damages based on violations as to
25  all class members. *Demaria v. Big Lots Stores – PNS, LLC*, No. 2:23-cv-00296-DJC-CKD, 2023
26  WL 6390151, at *6 (E.D. Cal. Sept. 29, 2023).

27  In *Demaria*, where the plaintiff similarly "use[d] language potentially limiting recovery to
28  only some class members, i.e., 'or some of them,'" the court found that the use of "'or' [in 'or

1  some of them'] indicates that all class members could conceivably recover." *Id.* Where such
2  language is used, it is reasonable to assume for amount in controversy calculations that 100% of
3  class members suffered the alleged violations. *Id.* (citing *Arias*, 936 F.3d at 927)); *cf. Higgins v.*
4  *Am. Bottling Co.*, Case No. CV 22-5351 JGB (KKx), 2022 WL 13811816, at *9-10 (C.D. Cal.
5  Oct. 21, 2022) (finding defendant's assumption that every class member suffered alleged
6  violation unreasonable where complaint alleged violations happened *only* to "some class
7  members"). Plaintiff cites to district court decisions remanding cases in which the complaints
8  used similar language asserting that "plaintiff and the class, or some of them" suffered the
9  violations. However, unlike *Demaria*, these cases do not address the issue of "plaintiff and the
10 class" being pleaded in the alternative. *See Calderon v. Bio-Med. Applications of Mission Hills,*
11 *Inc.*, Case No.: 2:23-cv-03382-MEMF-MRWx (C.D. Cal. Sept. 18, 2023); *Davis v. Empire*
12 *Chauffeur Serv., LTD*, Case No. 2:23-cv-07968-MEMF-SSC, 2024 WL 1217377 (C.D. Cal. Mar.
13 18, 2024).[13]

14      Here, as in *Demaria*, the complaint alleges, in the alternative, that all potential class
15 members suffered the alleged violations. Defendant is therefore entitled to calculate the amount
16 in controversy assuming plaintiff's alternate allegation to be true – that all potential class
17 members suffered the violations. It was reasonable for defendant to assume, based on the
18 language of the complaint, that the alleged minimum wage violations, overtime wage violations,
19 meal period violations, rest period violations, and wage statement violations occurred to each
20 potential class member for purposes of determining the amount in controversy. Accordingly,
21 defendant has shown by a preponderance of the evidence the following amounts in controversy
22 on these claims, using the 1.5% violation rate (one shift per quarter per potential class member),

---

[13] Additionally, the majority of the cases plaintiff cites do not discuss *Jauregui*. *See Hernandez v. DermCare Mgmt., LLC*, Case No. 2:23-cv-01949-FLA (Ex), 2023 WL 6319851 (C.D. Cal. Sept. 28, 2023); *Arias v. Shyft Grp.*, Case No. CV 23-1582-JFW(DFMx), 2023 WL 3559311 (C.D. Cal. May 17, 2023); *Peters v. TA Operating, LLC*, Case No. EDCV 22-1831 JGB (SHKx), 2023 WL 1070350 (C.D. Cal. Jan. 26, 2023).

totaling $1,695,714.80:

- Failure to pay minimum wages:  $96,275.20.
- Failure to pay overtime wages:  $433,238.40.
- Failure to provide meal periods:  $288,825.60.
- Failure to provide rest periods:  $288,825.60.
- Wage statement violations:  $588,550.00.

Defendant has also shown that the amount in controversy is met by the waiting time claim alone.  Under California Labor Code §§ 201 and 202, an employer must pay a terminated employee all wages earned and unpaid at the time of the employee's discharge if the employer terminates the employee or within 72 hours of the employee quitting or stating an intention to quit.  Plaintiff's cause of action for waiting time penalties alleges that defendant "at times" failed to "pay terminated Class Members, without abatement, all wages required to be paid by California Labor Code §§ 201 and 202 either at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ."  Compl. ¶ 61.  An employer who fails to pay a terminated employee his or her unpaid wages within the required time frame owes the terminated employee a penalty wage equal to one day of the employee's wages until the owed unpaid wages are paid, up to a maximum of thirty days of penalty wages.  Cal. Lab. Code § 203.

Defendant estimates the amount in controversy for this claim alone at $9,800,913.60, and the court agrees.  As noted above, defendant reaches this amount by the following calculation: 2,217 (the number of terminated employees in the class) x $147.36 (average daily wage of class members ($18.42 (average hourly wage) x 8 hour workday)) x 30 (maximum days of penalty wages).  Plaintiff asserts that it is unreasonable to assume that all 2,217 terminated class members suffered this violation given the complaint's language that defendant failed to pay unpaid wages to terminated class members "at times."  Compl. ¶ 61.  Plaintiff further asserts that it is unreasonable to assume that all terminated potential class members who would bring this claim would be entitled to the 30-day maximum penalty.  Because this allegation does not share the "Class, or some of them" language that the other claims have, the court analyzes whether the

15

1  proposed 100% violation rate is reasonable for this claim.

2    A 100% violation rate is reasonable on plaintiff's waiting time claim given that, as addressed above, reasonably construed, the complaint alleges that all class members suffered a minimum wage violation, overtime wage violation, meal period violation, and rest period violation.  Assuming every class member suffered these violations, it is reasonable to assume that all terminated class members would have been owed some unpaid wages at the time of termination.  It was thus reasonable for defendant to assume that plaintiff's waiting time claim applies to all terminated class members.  *See Chavez v. Pratt (Robert Mann Packaging), LLC*, Case No. 19-cv-00719-NC, 2019 WL 1501576, at *4 (N.D. Cal. Apr. 5, 2019) (defendant's 100% assumed violation rate for waiting time penalties reasonable because plaintiff had "ti[ed] the unpaid final wage claim to his other claims" and "if every putative class member incurred damages for at least one other claim in the complaint, every class member who departed [defendant] during the statutory period was due unpaid wages").

   It is also reasonable to assume that the vast majority of terminated employees would be owed the maximum penalty of 30 days' worth of wages.  The complaint does not allege that any of the unpaid wages were ever repaid, and it is reasonable to assume that the allegedly unpaid wages for hours worked remained unpaid until at least 30 days before this suit was filed, given that plaintiff brings this action to recover those wages.  *See Jauregui*, 28 F.4th at 994.  "[I]t [is] not unreasonable for [a defendant] to assume that the vast majority (if not all) of the alleged violations over the four years at issue in this case would have happened more than 30 days before the suit was filed, which would entitle the employees to the 30-day penalty." *Id.*  Therefore, defendant has shown by a preponderance of the evidence that the amount placed in controversy

///
///
///
///
///
///

16

by this claim alone exceeds $5 million.[14]

Accordingly, defendant has established that CAFA's $5 million jurisdictional requirement is met.

## IV. Conclusion and Order

Based upon the foregoing, plaintiff's motion to remand, Doc. 15, is **DENIED**.

IT IS SO ORDERED.

Dated:   June 28, 2024

UNITED STATES DISTRICT JUDGE

---

[14] Additionally, another putative class action against Merrill Gardens, alleging similar claims and purporting to involve a similar class, is being prosecuted in the Northern District of California after surviving a motion to remand.  *See* Order Denying Plaintiff's Motion to Remand, *Walls v. Merrill Gardens, LLC*, 4:23-cv-05188-YGR (N.D. Cal. Jan. 24, 2024).  Where "federal jurisdiction already exist[s] over the first [class] action, which [seeks] to represent all like individuals, the amount in controversy [can] be aggregated between the [actions]," supporting removal in the second-filed action.  *Sanders v. Kia Am. Inc.*, Case No. 8:23-cv-00486-JVS(KESx), 2023 WL 3974966, at *6 (C.D. Cal. June 13, 2023).