UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOB CHAVOYA, individually, and on behalf of all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>MERRILL GARDENS L.L.C. DBA TRUEWOOD BY MERRILL, a Washington limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendants. | No. 1:24-cv-00268-KES-BAM<br><br>ORDER GRANTING DEFENDANT MERRILL GARDENS L.L.C.'S MOTION TO COMPEL ARBITRATION<br><br>Doc. 34 |

This action concerns plaintiff Jacob Chavoya's state law claims against his former employer, defendant Merrill Gardens L.L.C., arising from Chavoya's position as a cook at Merrill Gardens' Truewood by Merrill facility located in Clovis, California. Doc. 34-3 ("Lingle Decl.") ¶ 6. Merrill Gardens moves to compel arbitration of Chavoya's claims on the basis that he agreed to arbitrate them in an agreement he signed when he began his employment with Merrill Gardens. Doc. 34. Chavoya opposes the motion, arguing that he has no recollection of signing the agreement, his claims cannot be compelled to arbitration under California law, and the agreement is unconscionable. Doc 37. For the reasons explained below, Merrill Gardens' motion to compel arbitration is granted.

///

1

I. **BACKGROUND**

Merrill Gardens operates senior living facilities in several states, including California. Lingle Decl. ¶ 4. Chavoya was an hourly-paid, non-exempt employee of Merrill Gardens from approximately February 2022 until June 2023. Doc. 1, Ex. A ("Compl.") ¶ 7.

A. **Merrill Gardens' Onboarding Process and the Arbitration Agreement**

According to Merrill Gardens' Senior Vice President and Chief Administrative Officer Morei Lingle, who is familiar with the company's organizational structure and its business operations, Merrill Gardens' California-based employees sign arbitration and onboarding agreements electronically on a platform called UKG. Lingle Decl. ¶¶ 1–2, 9. Employees are sent a link to complete the documents using the email address provided on their employment application and can review and sign documents remotely. *Id.* ¶ 9. UKG utilizes various factors to verify the signer's identity, including user authentication with user IDs and passwords; unique signatures that include the name of the signatory, the date, and a print marker; signature blocks that are a permanent part of the PDF document and include a non-reversible hash of the contents of the document as it was when the signing was completed; an audit trail that tracks signer actions; and secure encryption ensuring that signed documents cannot be altered. *Id.* ¶ 10, Ex. B.

New employees are provided with unique IDs for the UKG platform and must sign in through the link sent to their email. *Id.* ¶ 10. Employees are also required to create a permanent password to ensure that no one else can access their UKG account. *Id.* Once new employees log into UKG, forms and documents are displayed individually for them to read and sign. *Id.* Ex. B at 11. When a document requires a signature, employees cannot move forward in the system without selecting the box marked "Click to Sign." *Id.* An audit trail of these signatures is kept in a database which includes the user ID for the individual who signed the document, the date and time of the signing, the IP address of the logged-in user, and the name of the signed document. *Id.*

///
///
///

One of those documents is an arbitration agreement entitled "MUTUAL AGREEMENT TO ARBITRATE" ("MAA"). *Id.* Ex. A. A section entitled "Acknowledgment" states:

> By signing below, I am certifying that I have read, understand, and agree to be bound by the foregoing Agreement. I further certify that I was given reasonable time to review, ask questions about, and consider this Agreement, and am signing it of my own accord and free will.

*Id.* at 8. The MAA contains a section entitled "Employee's Right to Opt-Out" which states that "the Employee may opt out of this Agreement by sending" a "written opt-out notice within 10 days of Employee's signature on this Agreement." *Id.* at 7 (emphasis omitted). Further, this section states that "[a]n Employee who submits a timely opt-out . . . will not be subject to any adverse employment actions as a consequence of that decision." *Id.* In a section entitled "Scope of Arbitration," the MAA states that

> Employee and Employer agree that all claims between them of any kind or type [. . .] arising out of or relating to the Employee's employment by Employer (including, but not limited to, [. . .] any federal, state or local law or claims relating to [. . .] wage and hour, wage payment, or meal and rest periods) ("claims") shall be resolved exclusively through final and binding arbitration as provided in this Agreement, and shall be brought solely in the Party's individual capacity to resolve the Party's individual claims.

*Id.* at 5 (emphasis omitted). The MAA goes on to state that "[t]he scope of arbitration shall be to the full extent permitted under Section 2 of the Federal Arbitration Act ('FAA')". *Id.*

According to the signature audit report, on February 21, 2022, Chavoya logged into UKG using the email address he provided on his employment application. *Id.* ¶ 12. The report shows that he opened the MAA at 3:21 p.m. PST and affixed his digital signature. *Id.* Ex. C. The date that was automatically affixed to the agreement matches the date on which the audit shows that Chavoya electronically signed the agreement. *Id.* Exs. A, C; Doc. 38-1 ("Supp. Lingle Decl.") ¶ 9. On the same day at around the same time he electronically signed the MAA, Chavoya also completed tax documentation through the UKG platform using the same IP address. Supp. Lingle Decl., ¶ 9, Ex. D.

///

///

**B.      Procedural Background**

On January 30, 2024, Chavoya, individually and on behalf of similarly situated individuals, initiated this action by filing a putative class action complaint against Merrill Gardens in the Fresno County Superior Court. Compl. Merrill Gardens filed a notice of removal in this Court on March 4, 2024. Doc. 1. Chavoya filed a motion to remand on April 15, 2024, Doc. 15, which was denied on June 28, 2024. Doc. 22.

The complaint alleges several causes of action arising under the California Labor Code against Merrill Gardens, including for failure to pay minimum and straight time wages, failure to pay overtime wages, meal and rest period violations, failure to timely pay wages due at termination, failure to provide accurate itemized wage statements, failure to indemnify employees for necessary expenses, and failure to produce employment records. *See generally* Compl. It also asserts a cause of action under California Business and Professions Code § 17200 *et seq.*, resulting from the alleged unfair business practices set forth above.[1] *Id.*

Merrill Gardens filed a motion to compel arbitration on December 11, 2024. Doc. 34. Plaintiff Jacob Chavoya filed an opposition to the motion, Doc. 37, and Merrill Gardens filed a reply. Doc. 38. The Court took the motion under submission on the papers pursuant to Local Rule 230(g). Doc. 39.

**II.     LEGAL STANDARD**

The Federal Arbitration Act ("FAA") governs arbitration agreements. 9 U.S.C. § 2. "Section 2 of the statute makes arbitration agreements 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 649–50 (2022) (quoting 9 U.S.C. § 2). "As [the Supreme Court has] interpreted it, this provision contains two clauses: An enforcement mandate, which renders agreements to arbitrate enforceable as a matter of federal law, and a saving clause, which permits invalidation of arbitration clauses on grounds applicable to 'any contract.'" *Id.* at 650 (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339–40 (2011)).

---

[1] The allegations in the complaint are more fully set forth in this Court's Order denying Chavoya's motion to remand. Doc. 22 at 1–3.

A party seeking to enforce an arbitration agreement may petition the court for "an order directing the parties to proceed to arbitration in accordance with [its] terms." 9 U.S.C. § 4. When ruling on a motion to compel arbitration, a court determines "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The party seeking to compel arbitration bears the burden of proving an agreement's existence by a preponderance of the evidence. *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014).

"In determining whether the parties have agreed to arbitrate a particular dispute, federal courts apply state-law principles of contract formation." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Parties may rely upon general contract defenses to invalidate an agreement to arbitrate. *Concepcion*, 563 U.S. at 339. "To require arbitration, [a plaintiff's] factual allegations need only 'touch matters' covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624 n.13 (1985)). If a valid arbitration agreement encompassing the dispute exists, arbitration is mandatory. *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Under section 3 of the FAA, a court, "upon being satisfied that the issue involved . . . is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

**III.   ANALYSIS**

Merrill Gardens maintains that Chavoya entered into a valid and enforceable agreement to arbitrate all employment disputes, and that he agreed to arbitrate all claims on an individual basis and not as part of any class, collective, or representative action. Doc. 34 at 2. Chavoya asserts that the MAA is unenforceable because (1) California law precludes compelled arbitration of claims arising from Labor Code violations, (2) Merrill Gardens has failed to demonstrate that Chavoya signed the agreement, and (3) the agreement is unconscionable. Doc. 37 at 5. These arguments are each addressed below.

5

A. **Applicable Law**

Chavoya argues that the FAA does not apply, and therefore California Labor Code sections 229 and 432.6(a), which he contends prohibit mandatory arbitration of the wage claims in this case, control. Doc. 37 at 13. Chavoya asserts that there is no nexus between interstate commerce and his employment, and that parties cannot privately contract to create preemptive jurisdiction under the FAA. *Id.* at 14–16.

The Supreme Court has held that section 2 of the FAA is "in unmistakable conflict with California's § 229 requirement that litigants be provided a judicial forum for resolving wage disputes," and "under the Supremacy Clause, the state statute must give way." *Perry v. Thomas*, 482 U.S. 483, 491 (1987). The Ninth Circuit has similarly held that California Labor Code section 432.6 is preempted by the FAA. *Chamber of Commerce v. Bonta*, 62 F.4th 473, 478 (9th Cir. 2023). "Section 2, therefore, embodies a clear federal policy of requiring arbitration unless the agreement to arbitrate is not part of a contract evidencing interstate commerce or is revocable 'upon such grounds as exist at law or in equity for the revocation of any contract.'" *Perry*, 482 U.S. at 489 (quoting 9 U.S.C. § 2). The FAA defines the term "commerce" as "commerce among the several States or with foreign nations." 9 U.S.C. § 1.

In the statutory phrase "evidencing a transaction involving commerce," 9 U.S.C. § 2, the word "involving" reflects Congress' intent to exercise its commerce power to the fullest extent. *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 277 (1995). Thus, "it is perfectly clear that the FAA encompasses a wider range of transactions than those actually 'in commerce'—that is, 'within the flow of interstate commerce.'" *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (quoting *Allied-Bruce*, 513 U.S. at 273). Notwithstanding the FAA's expansive scope, its basic coverage authorization "insist[s] that the 'transaction' in fact 'involv[e]' interstate commerce, even if the parties did not contemplate an interstate commerce connection." *Allied-Bruce*, 513 U.S. at 281 (second alteration in original). The Supreme Court has identified "three categories of activity that Congress may regulate under its commerce power: (1) the use of the channels of interstate commerce; (2) the instrumentalities of interstate commerce, or persons or things in interstate commerce," and "(3) those activities having a substantial relation to interstate

1  commerce," that is, those activities that "substantially affect interstate commerce in the aggregate,
2  even if their individual impact on interstate commerce is minimal." *Taylor v. United States*, 579
3  U.S. 301, 306 (2016) (internal quotation marks and citations omitted).  "Congress' Commerce
4  Clause power 'may be exercised in individual cases without showing any specific effect upon
5  interstate commerce' if in the aggregate the economic activity in question would represent 'a
6  general practice ... subject to federal control.'"  *Citizens Bank*, 539 U.S. at 56–57
7  (quoting *Mandeville Island Farms, Inc. v. American Crystal Sugar Co.,* 334 U.S. 219, 236
8  (1948)).

9  "Employment contracts, except for those covering workers engaged in transportation, are
10 covered by the FAA."  *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (citing *Circuit
11 City Stores v. Adams*, 532 U.S. 105 (2001)).  In *Waffle House*, the plaintiff signed an arbitration
12 agreement prior to working as grill operator for Waffle House.  *Id.* at 282–83.  Here, Chavoya
13 was similarly working in the preparation of food as a cook, and the MAA is likewise part of an
14 employment contract as it was signed in the course of Chavoya's onboarding process when he
15 was hired by Merrill Gardens.

16 In *Hoover v. American Income Life Insurance Company*, 206 Cal. App. 4th 1193 (2012), a
17 case on which Chavoya relies, the court found that the subject agreement did not involve
18 interstate commerce because the employer only offered evidence that the employee was a
19 California resident and that the employer was based in Texas.  206 Cal. App. 4th at 1207–08.
20 However, the California Court of Appeal has subsequently noted that "[t]he court's reasoning in
21 *Hoover* was questionable," in part, because the court did not consider whether the employee's
22 activity in the aggregate represented a general practice subject to federal control.  *Evenskaas v.
23 Cal. Transit, Inc.*, 81 Cal. App. 5th 285, 297 n.5 (2022).  Additionally, the present case is
24 distinguishable from *Hoover*.  *See Vasquez v. RSI Home Products*, No. 8:20-CV-01494-JWH-
25 JDEX, 2020 WL 6778772, at *15 (C.D. Cal. Nov. 12, 2020) ("*Hoover* [is a] California case[],
26 which [is] not binding upon this Court, especially considering that interpretation of the FAA is a
27 matter of federal law, not California state law . . . [and] [i]n *Hoover*, the [court] determined that
28 the FAA did not apply because the defendant failed to adduce *any evidence* to establish that a

7

1 relationship existed between the defendant and the plaintiff or that the relationship involved
2 interstate commerce.").

3       Here, Merrill Gardens has demonstrated that Chavoya worked at a facility in California
4 and that Merrill Gardens is headquartered in Seattle, Washington and does business throughout
5 the United States and abroad. Doc. 34-1 at 9. The MAA also states that Merrill Gardens "is
6 engaged in transactions involving interstate commerce and Employee's employment involves
7 such commerce." Lingle Decl., Ex. A § 10. The nature of Chavoya's employment appears to
8 have sufficiently implicated interstate commerce as defined by the FAA. *See Allied-Bruce*, 513
9 U.S. at 282 (interstate nature of contract undisputed because of multistate nature of companies
10 and use of materials outside of state); *Steele v. Am. Mortg. Mgmt. Servs.*, No. 2:12-CV-00085
11 WBS JBM, 2012 WL 5349511, at *4, n.2 (E.D. Cal. Oct. 26, 2012) (interstate commerce
12 implicated where employer conducted business in several states while headquartered in a
13 different state than where employee was employed); *Langston v. 20/20 Companies, Inc.*, No.
14 EDCV 14-1360 JGB SPX, 2014 WL 5335734, at *4 (C.D. Cal. Oct. 17, 2014) (interstate
15 commerce implicated where "Defendant is headquartered in Texas and 'engages door-to-door
16 sales representatives in multiple states, including but not limited to California'"); *Rogers v. Lyft,
17 Inc.*, 452 F. Supp. 3d 904, 916 (N.D. Cal. 2020) (recognizing that employees' "work
18 predominantly entails intrastate trips, an activity that undoubtedly affects interstate commerce"),
19 *aff'd*, No. 20-15689, 2022 WL 474166 (9th Cir. Feb. 16, 2022).

20       In *Simeon v. Domino's Pizza LLC*, the court found that interstate commerce was
21 implicated because the arbitration agreement was "entered into between a New York resident
22 (Simeon) and a Michigan corporation (Domino's) doing business in 'multiple states,'" the
23 agreement "relate[d] to a 'general practice' involving or affecting commerce," and the agreement
24 "relate[d] to a business that uses materials and ingredients involved in interstate commerce." No.
25 17CV5550RJDST, 2019 WL 7882143, at *3 (E.D.N.Y. Feb. 6, 2019) ("It is highly likely that
26 everything from the cardboard used to make the pizza boxes, to the cheese and tomatoes used to
27 prepare the pizza, to the car parts in Simeon's delivery vehicle traveled in interstate commerce.").
28 Similarly, here, it is highly probable that in preparing food as a cook for Merrill Gardens,

8

1  Chavoya's employment involved materials and products that traveled in interstate commerce,
2  making his employment contract one which substantially affects interstate commerce in the
3  aggregate. The reasoning in *Simeon* is persuasive here and supports the rule set forth in *Waffle*
4  *House*, which is binding on this Court. *See Waffle House*, 534 U.S. at 289 ("Employment
5  contracts, except for those covering workers engaged in transportation, are covered by the
6  FAA.").

Accordingly, interstate commerce was sufficiently implicated by the parties' employment relationship such that the FAA would control in this case. Therefore, the Court need not consider whether the MAA itself created preemptive jurisdiction under the FAA by explicitly invoking it.[2]

### B. Authenticity of Signature

The parties do not dispute that the claims at issue here are encompassed by the "Scope of Arbitration" section of the MAA, which states that the agreement applies to "all claims . . . of any kind or type . . . arising out of or relating to the Employee's employment by Employer." Lingle Decl., Ex. A. Therefore, the Court need only determine "whether a valid agreement to arbitrate exists." *Chiron Corp.*, 207 F.3d at 1130.

Chavoya contends that Merrill Gardens fails to adequately establish that the parties entered into the arbitration agreement. Doc 37 at 5. He argues that Merrill Gardens' declarant, Morei Lingle, does not have personal knowledge of Chavoya's alleged execution of the agreement. *Id.* Chavoya asserts that (1) he does not recall ever seeing the MAA prior to bringing this legal action and does not recognize it, (2) he does not recall affixing or transmitting his electronic signature on the MAA, (3) he was unfamiliar with arbitration and did not know what it entailed prior to this lawsuit, (4) no one associated with Merrill Gardens ever explained or

---

[2] The MMA provides that "[t]he scope of arbitration shall be to the full extent permitted under Section 2 of the Federal Arbitration Act ('FAA')" and that "[t]his Agreement is intended by the Employer and Employee to be enforceable under the FAA, and supersedes any state law to the contrary of this Agreement." Lingle Decl., Ex. A. At least one court considering an arbitration agreement's express identification of the FAA as the governing statute, along with the general principle that the FAA governs arbitration agreements, has concluded that there was a presumption that the agreement in that case was enforceable under the FAA absent a statutory exception indicating otherwise. *See Mitchell v. Lineage Logistics Servs. LLC*, 769 F. Supp. 3d 1132, 1140 (E.D. Cal. 2025).

9

discussed what arbitration was with him throughout his employment, and (5) he would have declined to sign the MAA had he understood the meaning of arbitration. Chavoya Decl. ¶¶ 3–8. Chavoya also raises several objections to Ms. Lingle's declaration. Doc. 37-1.[3]

Chavoya's arguments concerning whether he entered into the arbitration agreement are unpersuasive. Merrill Gardens properly authenticated Chavoya's electronic signature on the arbitration agreement and has shown by a preponderance of the evidence that Chavoya entered into the agreement. *See* Lingle Decl. & Supp. Lingle Decl. "To authenticate evidence, a party must 'produce evidence sufficient to support a finding that the item is what the proponent claims it is.' *Am. Fed'n of Musicians of the U.S. v. Paramount Pictures Corp.*, 903 F.3d 968, 976 (9th Cir. 2018) (citing Fed. R. Evid. 901(a)). There are many methods of authenticating evidence under Federal Rule of Evidence 901(b), and the proponent's burden has been characterized as

---

[3] With respect to Chavoya's objections that Ms. Lingle lacks personal knowledge of the facts set forth in her declaration, "[p]ersonal knowledge may be inferred from a declarant's position." *In re Kaypro*, 218 F.3d 1070, 1075 (9th Cir. 2000). "[T]he requirement of personal knowledge imposes only a 'minimal' burden on a witness." *Strong v. Valdez Fine Foods*, 724 F.3d 1042, 1045 (9th Cir. 2013). Ms. Lingle's declaration meets this standard by establishing her position as Merrill Gardens' Chief Administrative Officer as well as her 28 years of experience with the company. Lingle Decl. ¶ 1. Her declaration also demonstrates her familiarity with Merrill Gardens' organizational structure and business operations, *Id.* ¶ 2, and her supplemental declaration further establishes her familiarity with the company's recordkeeping, human resources procedures, and onboarding procedure, Supp. Lingle Decl. ¶ 2. Therefore, Chavoya's personal knowledge objections are overruled.

Chavoya also objects to Ms. Lingle's supporting exhibits as hearsay. Doc. 37-1 at 2–3. A "record [that] was kept in the course of a regularly conducted activity of a business" is not excluded by the rule against hearsay. Fed. R. Evid. 803(6). Exhibits A and C are business records kept in the ordinary course of business and were generated at the time Chavoya electronically signed the MAA, and, therefore, fall within the business record exception to hearsay. Lingle Decl. ¶ 7, 11; Supp. Lingle Decl. ¶ 8; *see also Barrera v. Floor and Decor Outlets of America, Inc.*, No. 2:24-CV-02390-SB-KES, 2024 WL 3993871, *3 (C.D. Cal. July 11, 2024) (arbitration agreement and audit trail admissible where declaration demonstrated "requisite knowledge of the company's record-keeping practices"). Chavoya's hearsay objections to these exhibits are thus overruled.

Finally, Chavoya objects to a portion of Ms. Lingle's statement on the basis that it lacks probative value. Doc. 37-1 at 2 (quoting Lingle Decl. ¶ 6). Given that the Court did not rely on the objected-to portion of this evidence in reaching its decision on the instant motion, this objection is overruled as moot.

1  "not high." *See Prostek v. Lincare Inc.*, 662 F. Supp. 3d 1100, 1111 (E.D. Cal. 2023).[4]

2  Merrill Gardens has established through Ms. Lingle's declarations and the attached exhibits that Chavoya signed the arbitration agreement along with other onboarding documents on February 21, 2022. *See* Lingle Decl., Exs. A–C & Supp. Lingle Decl., Ex. D. Ms. Lingle's original declaration establishes her familiarity with Merrill Gardens' organizational structure and its business operations. Lingle Decl. ¶ 2. Her supplemental declaration further establishes her familiarity with the company's recordkeeping, human resources procedures, and onboarding procedure. Supp. Lingle Decl. ¶ 2. She describes the onboarding procedure, including the process used to obtain electronic signatures from new employees, and provides the arbitration agreement that Chavoya electronically signed. Lingle Decl. ¶ 7–12, Exs. A–C & Supp. Lingle Decl. ¶ 5–10, Ex. D. Based on these facts, Ms. Lingle's declarations sufficiently authenticate the signed arbitration agreement for purposes of Federal Rule of Evidence 901(a).

Chavoya argues that he did not agree to arbitration because he has "no recollection of having seen the MAA" and has "no recollection of affixing or transmitting the electronic signature." Chavoya Decl. ¶ 3–4. Chavoya's lack of recollection does not contradict the evidence that he signed the arbitration agreement, nor does it establish a lack of mutual consent. Under California law, a valid contract requires "mutual consent of the parties," which is "achieved through the process of offer and acceptance." *DeLeon v. Verizon Wireless, LLC*, 207 Cal. App. 4th 800, 813 (2012) (internal citations omitted). An offeree "may be held to have accepted, by his conduct, whatever terms the offer contains" so long as there was a sufficient "outward manifestation or expression of assent." *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 992 (1972). These principles apply to all contracts, including arbitration agreements. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014). Mutual consent "is determined [based on] the reasonable meaning of [the parties'] words and acts, and

---

[4] In his reply, Chavoya cites a California Court of Appeal case for the proposition that a party opposing arbitration can shift the burden of production back to the proponent of arbitration by simply "challeng[ing] the authenticity of the agreement by saying under penalty of perjury that [they] did not remember it." Doc. 37 at 7 (citing *Gamboa v. Northeast. Community Clinic*, 72 Cal. App. 5th 158, 168 (2021)). However, *Gamboa* does not control here, as the Federal Rules of Evidence and not the California Evidence Code apply. *See Prostek*, 662 F. Supp. 3d at 1111.

1  not their unexpressed intentions or understandings." *Id.*

2  Ms. Lingle's declarations and attached exhibits establish the steps that Chavoya, as a new employee, necessarily followed through the online onboarding process, including Chavoya's specific acknowledgement of and consent to the arbitration agreement. *See generally* Lingle. Decl. During this process the arbitration agreement was separately identified, and Chavoya separately entered his electronic signature agreeing to it. *Id.* ¶ 7–9, 12. The onboarding steps clearly identified the option to opt out of the arbitration agreement in bolded language, which Chavoya did not exercise. Lingle Decl., Ex. A § 7. Chavoya does not provide any evidence to the contrary, stating only that he does not *recall* signing the agreement. Chavoya Decl. ¶ 4.

Chavoya argues that Merrill Gardens failed to "provide evidence that the employee's actions were the exclusive way an acknowledgement form bearing the employee's credentials could be created." Doc. 37 at 8 (citing *Ruiz v. Moss Bros. Auto Group, Inc.*, 232 Cal. App. 4th 836, 843–44 (2014)). California Civil Code section 1633.9(a) states that an electronic signature can be attributed to a person when the act of that person is demonstrated through "a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." In *Ruiz*, "the fact the . . . agreement had an electronic signature on it in the name of [the plaintiff], and a date and time stamp for the signature, was insufficient to support a finding that the electronic signature was, in fact, 'the act of' [the plaintiff]" absent evidence or an explanation from the defendant's declaration supporting the fact that the plaintiff signed the agreement. *Ruiz*, 232 Cal. App. 4th at 843–44.

*Ruiz* is distinguishable from the present case. Unlike the declaration in *Ruiz*, Ms. Lingle's declarations and supporting exhibits provide sufficient evidence to support the finding that the electronic signature on the MAA does, in fact, belong to Chavoya. Ms. Lingle's declarations are akin to the declaration in *Lira v. National Distribution Centers, LLC*, No. EDCV 21-672 JGB (KKx), 2021 WL 6693934, at *2–3 (C.D. Cal. Dec. 22, 2021). In *Lira*, the defendant's director of benefits "explain[ed] that the UKG Pro platform is a secure system requiring a unique login ID and password," and that "employees must create a UKG Pro account with the unique login ID and password and must view and sign onboarding documents on the platform." *Id.* The *Lira* court

12

found that through this declaration, the defendant "met its burden to prove the existence of a valid arbitration agreement between the parties." *Id.* Here, Merrill Gardens used the same platform, UKG, to obtain electronic signatures from its employees. Lingle Decl. ¶ 9. Further, Ms. Lingle includes detailed information in her declaration about the process through which "employees are provided unique IDs for the UKG platform" and are required to "create a permanent password to ensure no one else can access their UKG account." *Id.* ¶ 10. Ms. Lingle also attaches a signature audit report from UKG which shows that Chavoya viewed and signed the MAA on February 21, 2022 at around 3:21 p.m. PST. *Id.*, Ex. C.

       The declaration in *Lira* was sufficient to authenticate the employee's signature even where an audit report was not presented, although some courts have indicated that an audit trail can help authenticate an employee's signature on an arbitration agreement. *See, e.g., Taft v. Henley Enters., Inc.,* No. SACV 15–1658–JLS (JCGx), 2016 WL 9448485, *3 (audit trail generated during onboarding process where employee was left alone was sufficient to demonstrate the authenticity of employee's signature on arbitration agreement); *Smith v. Rent-A-Center*, No. 1:18-CV-01351 LJO JLT, 2019 WL 1294443, *6 (signature not authenticated where "no audit trail [was] discussed").

       Here, Merrill Gardens includes a full version of Chavoya's signature audit report, which identifies an IP address that was consistently used for every onboarding document signed by Chavoya, including documents requiring Chavoya to input tax documentation and other personal information. Supp. Lingle Decl., Ex. D. In *Espejo v. Southern California Permanente Medical Group*, the court found that similar supporting documentation including the employee's IP address established that the signature in question "could have only been placed on the signature pages of the employment agreement . . . by someone using [the employee's] unique user name and password." 246 Cal. App. 4th 1047, 1062 (2016). Notably, Chavoya concedes that Merrill Gardens instructed him to review documents on or about the date prior to his first day of employment. Chavoya Decl. ¶ 5. This admission supports the conclusion that Chavoya was the individual who signed the MAA because, as Ms. Lingle states in her supplemental declaration, "at the same time he electronically signed the Agreement, Plaintiff completed tax documentation

13

through the UKG platform [which] required him to input personal information that it is unlikely someone else would have known and that, to the best of [her] knowledge, no one at Merrill Gardens knew." *See* Supp. Lingle. Decl. ¶ 10, Ex. D. This assertion is supported by a longer signature audit report, which reveals that the same IP address was used to complete several onboarding documents on the same day, at around the same time. *Id.*

For these reasons, Merrill Gardens has presented sufficient evidence to demonstrate that the signature on the MAA belongs to Chavoya, and "the making of the arbitration agreement" is therefore not at issue. 9 U.S.C. § 4. Accordingly, the Court concludes that Chavoya entered into a valid arbitration agreement.

### C. **Unconscionability**

Finally, Chavoya contends that the arbitration agreement is unconscionable and should not be enforced. "Under California law, 'the party opposing arbitration bears the burden of proving any defense, such as unconscionability.'" *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1013 (9th Cir. 2023) (quoting *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012)). If a contract or clause was unconscionable at the time it was made, a court may refuse to enforce the contract, enforce the remainder of the contract without the unconscionable clause, or limit the application of any unconscionable clause to avoid an unconscionable result. Cal. Civ. Code § 1670.5(a). Unconscionability has both procedural and substantive elements, "the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 340 (2011) (quoting *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000)).

Under California law, "unconscionability requires a substantial degree of unfairness beyond a simple old-fashioned bad bargain." *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210 (9th Cir. 2016) (cleaned up) (quoting *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1244 (2016)). Unconscionability "is concerned . . . with terms that are unreasonably favorable to the more powerful party." *Bielski*, 87 F.4th at 1013 (quoting *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 911 (2015)). "[B]oth procedural and substantive unconscionability must be present in order for an agreement to be unenforceable." *Mohamed*, 848 F.3d at 1211 (citation

omitted); *see also Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (en banc) (same). While both elements must be shown to establish the unconscionability defense, they need not be present in the same degree—they are weighed on a sliding scale, which allows a lesser finding of procedural unconscionability when there is significant substantive unconscionability present, and vice versa. *Armendariz*, 24 Cal. 4th at 114.

### 1. Procedural Unconscionability

Chavoya contends that the arbitration agreement is a procedurally unconscionable contract of adhesion since it was "a pre-printed form agreement which was finalized prior to presentment" and "not a single term set forth in the MAA was a product of negotiation between the parties." Doc. 37 at 17. He further argues that the opt-out provision does not save the agreement from being procedurally unconscionable because "the opportunity to reject the agreement does not negate the adhesive character of a contract, which arises from the ability to bargain, not the inability to reject the agreement altogether." *Id.* at 18.

"The threshold inquiry in California's unconscionability analysis is 'whether the arbitration agreement is adhesive.'" *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1281 (9th Cir. 2006) (quoting *Armendariz*, 24 Cal. 4th at 113). A contract of adhesion is "a standardized contract, imposed upon the subscribing party without an opportunity to negotiate the terms." *Id.* (citation omitted). "Arbitration contracts imposed as a condition of employment are typically adhesive." *OTO, LLC v. Kho*, 8 Cal. 5th 111, 126 (2019); *see also Armendariz*, 24 Cal. 4th at 115 ("[i]n the case of preemployment arbitration contracts, the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration agreement").

However, as the Ninth Circuit has held, "an arbitration agreement is not adhesive if there is an opportunity to opt out of it." *Mohamed*, 848 F.3d at 1211 (citing *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002)); *see also Kilgore*, 718 F.3d at 1059. In *Mohamed*, the Ninth Circuit reversed the district court's denial of Uber's motion to compel arbitration of a former Uber driver's claims, finding that Uber's arbitration agreements were not adhesive

1 because the plaintiff had a meaningful opportunity to opt out of them, and that the challenged
2 terms of the agreements were therefore not procedurally unconscionable. *Mohamed*, 848 F.3d
3 at 1211. The agreements in *Mohamed*, as here, provided the plaintiff with the option to opt out of
4 arbitration by delivering notice of an intent to opt out. *Id.* The opt out provision in one of the
5 Uber agreements required drivers to opt out either in person at Uber's San Francisco offices or by
6 overnight delivery service. *Id.* at 1210–11. The Ninth Circuit held that this opt out procedure
7 was not illusory. *Id.* at 1211. As the opt-out provisions in the Uber agreements provided a
8 meaningful choice to Uber drivers, the Court concluded the agreements were neither adhesive nor
9 procedurally unconscionable. *Id.* at 1211–12.

10       *Mohamed* controls the outcome in this case. As in *Mohamed*, Chavoya was clearly
11 notified of the option to opt out of Merrill Gardens' arbitration agreement and the window in
12 which to do so. *See* Lingle Decl., Ex. A § 7. The opt-out procedure mirrors the procedure upheld
13 in *Mohamed*: Chavoya was similarly required to deliver the opt-out form to Merrill Gardens by
14 mail, and he was given 10 days to do so. *Id.*[5] Chavoya did not elect to opt out. As in *Mohamed*,
15 the arbitration agreement was not adhesive as it contained a meaningful opt out option, and the
16 agreement here is therefore not procedurally unconscionable. *See Mohamed*, 848 F.3d at 1211.

17       Chavoya asserts that "very recent case authority has clarified that a finding of procedural
18 unconscionability does not require a showing by an employee that he/she/they unsuccessfully
19 attempted to bargain with the employer." Doc. 37 at 18 (citing *Jenkins v. Dermatology Mgmt.*,
20 107 Cal. App. 5th 633, 642 (2024) (arbitration agreement procedurally unconscionable where
21 reasonable person would have concluded it was a take-it-or-leave-it condition of employment)).
22 Unlike the plaintiff in *Jenkins*, Chavoya had a meaningful opportunity to opt out of the MAA and
23 did not do so. In fact, the MAA's opt-out provision notes that employees may opt out of the
24 agreement without any adverse effect on their employment, meaning that Chavoya could have
25 opted out of the agreement and continued to work for Merrill Gardens; it was not a condition of

---

[5] *See also, Huitron v. Pro Motorcars*, 2022 Cal. Super. LEXIS 82908, at *7 (Cal. Super. Ct. Dec. 8, 2022) (procedural unconscionability tempered where plaintiffs had a right to opt out of agreement no less than 10 days from the date agreement was signed).

16

1  his employment that he sign it.  *See* Lingle Decl., Ex. A § 7.

2  To the extent Chavoya argues that, notwithstanding the meaningful opt-out option, the arbitration agreement is nonetheless adhesive and thus procedurally unconscionable, this argument is foreclosed by Ninth Circuit precedent.  *See, e.g., Kilgore*, 718 F.3d at 1059 (arbitration clause not procedurally unconscionable where there was a meaningful opt-out option); *Mohamed*, 848 F.3d at 1211 ("an arbitration agreement is not adhesive if there is an opportunity to opt out of it").

### 2. Substantive Unconscionability

Chavoya argues that the MAA cannot be enforced because it contains several substantively unconscionable provisions, including (1) an unconscionable fee provision, (2) a wholesale PAGA waiver, and (3) non-arbitrable claims.  Doc. 37 at 18-24.

#### a. Unconscionable Fee Provision

Chavoya asserts that the MAA's fee provision is unconscionable because it allows only the employer to recover attorney's fees.  Doc. 37 at 19 (citing Lingle Decl., Ex. A § 6).  "[A]n arbitration agreement may not limit statutorily imposed remedies such as . . . attorney fees." *Armendariz*, 24 Cal. 4th at 103.  Here, arbitration under the MAA is "administered by the Judicial Arbitration and Mediation Services, Inc. ('JAMS') [and is] subject to JAMS' Policy on Employment Arbitration Minimum Standards of Procedural Fairness."  Lingle Decl., Ex. A § 5. These standards "mandate that the arbitrator be permitted to award '[a]ll remedies that would be available under the applicable law in a court proceeding, including attorneys fees . . .'" *JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness*, JAMS (effective July 15, 2019), https://www.jamsadr.com/employment-minimum-standards/.  Additionally, Chavoya's interpretation of the MAA's fee provision is unconvincing in light of Merrill Gardens' concession that Chavoya can seek attorney's fees.  Doc. 38 at 8–9.  The MAA therefore does not limit attorney's fees and is not substantively unconscionable for that reason.

#### b. Wholesale PAGA Waiver

Chavoya argues the MAA's requirement to arbitrate certain claims individually constitutes a violation of the California Supreme Court's holding in *Iskanian v. CLS*

17

*Transportation Los Angeles, LLC*, 59 Cal. 4th 348 (2014), *abrogated on other grounds by Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639 (2022), which rendered employment agreements containing predispute categorical waivers of the right to bring representative PAGA claims contrary to public policy and unenforceable as a matter of state law. Doc. 37 at 19–20. Chavoya's argument is of limited relevance here because Chavoya has not brought a PAGA claim in the present case.[6] In fact, Merrill Gardens represents that Chavoya "currently has a PAGA representative action pending against Defendant in Fresno County Superior Court, which Defendant has not argued is barred by the parties' Agreement." Doc. 38 at 9. Based on that representation, it appears that the MAA does not operate as a wholesale PAGA waiver. Therefore, the MAA is not substantively unconscionable in this respect.

      c.  Inclusion of Non-Arbitrable Claims

Finally, Chavoya argues that since the Scope of Arbitration section of the MAA "broadly lists all employment claims covered by the MAA without excepting sexual harassment and assault claims," it is illegal and unconscionable. Doc. 37 at 20. The Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("EFAA") bars the forced arbitration of sexual harassment and assault claims. 9 U.S.C. §§ 401–02. Here, Chavoya is not asserting any sexual harassment or assault claims. *See generally* Compl. Further, the MAA states that it does not apply to "claims that cannot be arbitrated as a matter of law." Lingle Decl., Ex. A § 1. Since sexual harassment and assault claims cannot be arbitrated as a matter of law under the EFAA, the MAA is not unconscionable since it does not apply to those claims.

Therefore, the MAA is not substantively unconscionable. Because both substantive and procedural unconscionability are required for an agreement to be unenforceable, the MAA is not unenforceable on these grounds. Having found the MAA to be valid and enforceable, and because Chavoya's claim is encompassed by that agreement, the Court grants Merrill Garden's

---

[6] Even if Chavoya had brought a PAGA claim in this case and assuming section 8 of the MAA did constitute a wholesale waiver, the agreement contains a severability clause which allows the remainder of the agreement to be enforceable in the event any portion is deemed unenforceable. Lingle Decl., Ex. A § 12; *see also Viking River*, 596 U.S. at 662 (employer entitled to enforce agreement as to employee's individual PAGA claim because of severability clause).

motion to compel Chavoya's claims to arbitration.

## IV. CONCLUSION

For the reasons explained above:

1. Merrill Gardens' motion to compel arbitration, Doc. 34, is granted;
2. The parties shall submit all claims pending in this matter to arbitration in accordance with the employment arbitration policy signed on February 21, 2022 (Lingle Decl., Ex. A);
3. This action is dismissed without prejudice; and
4. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: July 31, 2025

UNITED STATES DISTRICT JUDGE

19